**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  03-599-01** |
| | : | |
| **v.** | : | |
| | : | **CIVIL ACTION NO. 09-052** |
| **JOSE RIVAS** | : | |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                                                    **July 22, 2010**

In his motion under 28 U.S.C. § 2255 challenging his conviction for conspiring to distribute cocaine base ("crack"), Jose Rivas  raises ineffectiveness of counsel at both the trial and the sentencing levels.  He asserts that his trial counsel was ineffective for failing to object to testimony that he was a target of the government's drug investigation, and to the jury instructions relating to reasonable doubt and the stipulation about the substance and amount of crack cocaine.  He contends that counsel at sentencing was ineffective because he failed to argue that Rivas was only responsible for the drug quantity attributable to him and to move for a downward departure based on sentencing entrapment.

Because his claims are without merit, his motion will be denied.

**Factual and Procedural History**

On four separate occasions, Charles Mobley, while working as a confidential informant with government agents, purchased crack cocaine at 7th and Reed Streets in Philadelphia.  Initially,  Mobley dealt only with Darrin Culler.  In in later transactions, he dealt directly with Rivas and Juan Johnson.   The transactions were surveilled and documented by the agents.

On April 25, 2002, after Mobley called Culler to arrange a purchase of crack cocaine, they met and exchanged $1,200 for 41.2 grams of crack cocaine. On June 25, 2002, Mobley and Culler met again, exchanging $1,600 for 54.3 grams of crack cocaine. Before leaving, Culler provided Mobley with Rivas's telephone number to call if he needed more crack cocaine. Rivas supplied the drugs sold on April 25, 2002 and June 25, 2002.

On August 6, 2002, Mobley contacted Rivas directly and arranged to purchase crack cocaine. The following day, Mobley purchased 80.1 grams of crack cocaine for $2,400. It was not clear whether it was Rivas or Culler who passed the crack cocaine to Mobley.[1]

Mobley again contacted Rivas on September 11, 2002 to arrange a purchase of crack cocaine. The next day, Mobley met Johnson, whom Rivas had asked to handle the sale. Mobley paid Johnson $2,400 for 86.2 grams of crack cocaine. After the sale, Rivas contacted both Mobley and Johnson to determine how the sale had gone.

After each transaction, the agents confiscated the drugs which were weighed and analyzed by police chemists. The drugs were preserved for evidence.

Rivas was charged with conspiracy to distribute crack cocaine,[2] and distributing crack cocaine[3] and aiding and abetting the distribution of crack cocaine.[4] Following a jury trial at which both Culler and Johnson testified, Rivas was found guilty of the conspiracy charge, but not guilty of the distribution charge. He was sentenced to a mandatory

---

[1] Culler testified that he only sold crack cocaine on April 25, 2002 and June 25, 2002, and he does not remember selling crack cocaine on August 7, 2002. Mobley testified that Rivas gave him the drugs, but both Culler and Rivas were present. No one saw Rivas personally handle the drugs during the transaction. Rivas was found not guilty of distribution.

[2] 21 U.S.C. § 846.

[3] 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

[4] 18 U.S.C. § 2.

minimum prison term of 240 months.

Rivas appealed to the Third Circuit Court of Appeals, which affirmed the conviction and sentence. His petition for certiorari was denied by the United States Supreme Court. He then filed this timely petition under 28 U.S.C. § 2255.

In his petition, Rivas claims that his trial counsel was ineffective in three situations. He argues that his attorney failed to object to: (1) testimony that Rivas was a target of the investigation; (2) the "two-inference" jury charge which instructed that "[i]f you view the evidence as reasonably permitting either a finding of guilty or a finding of not guilty, you must adopt the conclusion of not guilty as your verdict"; and (3) the jury instruction regarding a stipulation which stated that:

> [w]hen a fact is stipulated or agreed by both sides the law deems that fact to be established and you are to accept that fact as established for your purposes. You should concern yourselves with determining from the evidence only those facts to which there has been no stipulation. Tr. Second Day at 154.

He also contends that counsel was ineffective at sentencing when he failed to request a determination of the drug quantity attributable to him, and to argue sentencing entrapment.

## Legal Standard

Ineffective assistance of counsel claims are evaluated under the familiar two part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362, 391 (2000). First, the petitioner must demonstrate that his attorney's performance was deficient, that is, "counsel's representation fell below an objective standard of reasonableness," considering all of the surrounding circumstances of the particular case and the facts viewed at the time of counsel's conduct. *Strickland*, 466 U.S.

at 687-89. Second, if there was a deficiency, he must show that it prejudiced his defense. *Id*. at 692. The prejudice prong requires a showing that as a result of the deficient representation, a reasonable probability exists that the results of the proceedings would have been different. *Id*. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id*. at 694. In other words, the prejudice component focuses on whether counsel's deficient performance renders the result of the proceedings unreliable or fundamentally unfair. *Williams*, 529 U.S. at 393, n. 17.

### "Target" Testimony

Rivas claims that his counsel was ineffective for failing to object to testimony that he was a target of the drug investigation that ultimately resulted in his arrest. He claims that the testimony about who "ended up being the target" of the investigation was testimonial hearsay in violation of the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36 (2004) and *Idaho v. Wright*, 497 U.S. 805 (1990).

The Third Circuit Court of Appeals concluded on direct appeal that although the testimony was improper and there was no legitimate basis for the question, there was no plain error in its admission. *United States v. Rivas*, 493 F.3d 131, 137 (3d Cir. 2007). The court found that if "there was a brief suggestion of extra-record evidence . . . the jury was instructed to disregard it." *Id*. The Third Circuit was "not convinced that the 'target' testimony affected the outcome of the trial." *Id*.

Considering the appellate court's finding, Rivas cannot show any prejudice. The Third Circuit determined that the 'target' testimony did not affect the outcome of the trial. Therefore, Rivas cannot show any prejudice from the failure of counsel to object to the "target" testimony. *Id*.

There was no Confrontation Clause violation. The Confrontation Clause protects against the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had [the] opportunity for cross examination." *Crawford*, 541 U.S. at 53-54. The Court explained that "[t]he [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id*. at 59 n. 9.

In this case, the witness, who characterized Rivas as one of the "targets", was available for cross-examination to test the basis and reliability of his testimony. Therefore, there was no Confrontation Clause violation.

Even if the testimony was inadmissible hearsay, counsel cannot be faulted for not objecting to it. It is understandable why counsel chose not to cross examine the witness on this issue. He would have opened the door for the introduction of evidence that would have severely prejudiced his client. Furthermore, rather than call attention to the passing comment, counsel let it go without objection. Thus, counsel was not deficient.

### "Two-Inference" Jury Instruction

The "two-inference" jury instruction has been disapproved, but has not been held *per se* constitutionally deficient. *United States v. Isaac*, 134 F.3d 199, 203 (3d Cir. 1998). In determining whether the "two-inference" instruction was constitutionally deficient, the reasonable doubt instruction must be considered as a whole. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (*quoting Holland v. United States*, 348 U.S. 121, 140 (1954)). In assessing whether an instruction is constitutionally deficient, the question "is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so . . . ." *Id*. at 6 (*citing Estelle v. McGuire*, 502

U.S. 62, 72 n.4 (1991)).

In *Isaac*, the trial court's reasonable doubt instruction included the following:

[W]hile bearing in mind that it is rarely possible to prove anything to an absolute certainty, you must remember, as well, that a defendant must never be convicted on mere assumption, conjecture or speculation. **So if the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should, of course, adopt the conclusion of innocence.** *Isaac*, 134 F.3d at 202.

In *Isaac*, the trial court contrasted guilt and innocence. Doing so, according to the Third Circuit, it suggested a lower standard of proof. *Id*. at 204. While noting that the Second Circuit had held the "two-inference" instruction, such as the one in *Isaac*, improper because it "'may mislead a jury into thinking that the government's burden is somehow less than proof beyond a reasonable doubt'", the Third Circuit, nevertheless, held that this "jury instruction, taken as a whole, was not constitutionally deficient." *Id*. at 203-04 (*quoting United States v. Inserra*, 34 F.3d 83, 91 (2d Cir. 1994)) (citations omitted).

In the *Isaac* case, the Third Circuit found that the instruction correctly described the reasonable doubt. *Id*. at 204. It noted that the trial court adequately instructed that the burden of proof always remained on the government and never shifted to the defendant. *Id*.

In this case, the reasonable doubt instruction was as follows:

[i]n a criminal case, the burden is always upon the government to prove guilt beyond a reasonable doubt. The burden is never on a defendant to prove that he is not guilty. The government has the burden of proving each of the elements of the crimes charged beyond a reasonable doubt . . . .
It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. I will define for you reasonable doubt and I emphasize to you that this is an extremely important principle under our system of democracy.
A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act. Proof

beyond a reasonable doubt must therefore be proof of such a convincing character, that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

You must remember that a defendant is never to be convicted on suspicion or conjecture. Beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt.

If based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty.

If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Unless the government proves beyond a reasonable doubt that a defendant committed each and every element of the offense charged in the indictment, you must find that defendant not guilty of that offense.

If, after careful and impartial consideration of all the evidence, you have a reasonable doubt that the defendant Jose' Rivas is guilty as charged, you must find him not guilty.

**If you view the evidence as reasonably permitting either a finding of guilty or finding of not guilty, you must adopt the conclusion of not guilty.**

You are here to determine whether the government has proven the guilt of the defendant Jose' Rivas beyond a reasonable doubt . . . .

So, if the evidence convinces you beyond a reasonable doubt of the guilt of the defendant for the crimes charged in the indictment, you should so find, even though you may believe that one or more other persons are also guilty, but if reasonable doubt remains in your mind after an impartial consideration of all the evidence or lack of evidence in this case, it is your duty to find the defendant not guilty. Tr. Second Day at 155-57.

The instruction given in this case was similar to, but significantly different from, the one in *Isaac*. The problem with the instruction in *Isaac* was that it suggested that the defendant was either guilty or innocent. Innocence is not an option. Even though not innocent, the defendant is entitled to an acquittal when the government has failed to prove his guilt beyond a reasonable doubt. Giving the jury a choice between guilt and innocence also imposes a burden on the defendant, implying that he must prove his innocence.

Unlike the *Isaac* instruction, the one in this case did not lessen the standard of proof. It did not offer a choice between guilt and innocence. Rather, it clearly instructed the jury that the choice was between guilty and not guilty, and, at the same time,

emphasized repeatedly throughout the instructions that the government had the burden of proving the defendant's guilt beyond a reasonable doubt.

The instruction more than adequately stated the reasonable doubt standard. It placed the burden of proof on the government. It never suggested that the burden shifted to the defendant. Indeed, it emphasized that the defendant did not have any burden to prove anything.

Counsel cannot be faulted for not objecting to the instruction. It properly stated the standard. Therefore, no prejudice resulted from counsel's failure to object to the reasonable doubt instruction because the instruction, taken as a whole, was not constitutionally deficient.

### Stipulation Jury Instruction

Rivas contends that trial counsel should have objected to the trial court's jury instruction covering the stipulation regarding the nature and the quantity of the substance sold to Mobley. Rivas argues that under *United States v. Cornish*, 103 F.3d 302 (3d Cir. 1997), the jury should have been informed that although it could have accepted the fact stipulated as true, it was not required to do so.

Here, Rivas and the government stipulated that the substance sold was crack cocaine and what the weight of each sale was. The following instruction was given:

> [t]here was a stipulation that was made between the parties which was an agreement that if the chemist was called to testify as to the description, that is the identity of the packets, the contents of the packets were cocaine and the amounts. As I told you then, that was an agreement between the government and Mr. Rivas. Mr. Rivas agreed that the analysis would show the weight and that it was cocaine. **He did not agree that he had anything to do with that.**
> When a fact is stipulated or agreed by both sides, the law deems that fact to be established for your purposes. You should concern yourselves with

determining from the evidence only those facts to which there has been no stipulation.  Tr. Second Day at 153-54.

The instruction was inaccurate.  However, because the defense was that Rivas had nothing to do with the drug transactions, the nature and the amount of the substances involved were not at issue.  Accordingly, defense counsel can not be deficient for not objecting to the stipulation instruction.

Counsel's performance is deficient only where the defendant can show that counsel's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  Where counsel's conduct falls within the wide range of reasonable professional assistance under the circumstances, it is presumed sound strategy.

"To overcome the *Strickland* presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy."  *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).

The analysis starts with the presumption that counsel's conduct was part of a sound strategy.  This "weak" presumption can be rebutted by showing either that the conduct was not part of a strategy or was part of an unsound strategy.  *Id*. at 499-500.  Where the record does not explicitly reveal trial counsel's actual strategy or the lack of one, the presumption may only be rebutted through a showing that no sound strategy could have supported the conduct.  *Id*. at 500.

Where there is a showing that counsel's conduct was part of a strategy

devised after an investigation of the law and facts, the 'weak' presumption becomes a 'strong' presumption, which is 'virtually unchallengeable.'" *Id*. at 500.

"[O]vercoming the strategic presumption does not, in itself, entitle [the defendant] to relief. It merely gives him the opportunity to show that counsel's conduct fell below objective standards of attorney conduct." *Id*. at 501.

Here, defense counsel's strategic reason for not objecting to the jury instruction on the stipulation is apparent from the record. The defense strategy was not to contest that it was crack cocaine or the amount of crack cocaine sold. Rather, the defense was that Rivas had nothing to do with the drug transactions. He argued that the government's witnesses were incredible and unreliable.

Indeed, the stipulation clearly reflected that strategy. Rivas can not now change that strategy to support a claim of ineffectiveness. Thus, trial counsel, who was pursuing a sound strategy, was not deficient.

To satisfy the prejudice component, the defendant must establish "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 502 (*quoting Strickland*, 466 U.S. at 694). He "need not show that counsel's deficient performance more likely than not altered the outcome in the case - rather, he must show only a probability sufficient to undermine the confidence in the outcome." *Id*. at 502 (citations and internal quotation marks omitted). The prejudice standard is not "a stringent one." *Id*. (*citing Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005)).

In *Cornish*, the defendant entered into two stipulations. *Cornish*, 103 F.3d at 304. The defendant, who was charged with possession of a firearm by a

convicted felon,[5] stipulated that "if called to testify, an agent . . . would state that the firearm in question was shipped and transported in interstate commerce," and that the defendant had been convicted of a previous crime punishable by a term of imprisonment of more than one year. *Id*. The jury was instructed that "'as you know certain facts were agreed to by stipulation and are therefore to be accepted by you without any evidence.'" *Id*. (citations omitted). The Third Circuit held that the instruction, although incorrect, did not amount to plain error because there had been no dispute about the defendant's prior conviction and he had voluntarily entered into the stipulation. *Id*. at 306. Furthermore, it noted that there was no difference even under the harmless error standard because the trial court's "instruction did not affect the defendant's substantial rights and was harmless beyond a reasonable doubt." *Id*. (*citing Chapman v. California*, 386 U.S. 18, 24 (1967)).

As in *Cornish*, there was no dispute regarding the substance or the amount of the drugs. Rivas did not challenge this evidence.

To assure that he was voluntarily entering into the stipulation, Rivas was questioned outside the jury's presence regarding the stipulation.

> THE COURT: It is my understanding that there is going to be a stipulation regarding the substances that were seized and the chemical analysis, is that correct?
>
> MR. SAVINO: Yes, your Honor.
>
> THE COURT: I want to make sure, Mr. Rivas, you understand what is happening.
>
> THE DEFENDANT: Yes.

---

[5] 18 U.S.C. § 922(g).

> THE COURT: You are agreeing that if the chemist came to testify, that he would testify that the substance was crack cocaine?
>
> MR. SAVINO: I explained, it had no negative inference. He is not related to it. They are not his drugs. Tr. First Day at 12.

Later in the day, Rivas was again questioned outside the jury's presence regarding the substance and amount of crack cocaine.

> THE COURT: Mr. Rivas, Mr. Savino has indicated to me that you have agreed to stipulate, that is agreed to findings of the chemist about the drugs represented by the exhibit here, the different transactions are indeed crack cocaine, is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You do that with full knowledge, you have the right to challenge that? He can cross examine on that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You are not challenging the fact what they got from Mobley was crack cocaine?
>
> THE DEFENDANT: No. Tr. First Day at 154-55.

These colloquies demonstrate that the decision to not challenge the content of the stipulation was part of the defense strategy that was formulated with Rivas's input and consent. He has demonstrated that counsel acted in conformity with his trial strategy. Indeed, the stipulation was entered into voluntarily and the stipulated facts were not disputed.

### Drug Quantity Attributable to Rivas

Rivas claims that although the jury determined the amount of drugs attributable to the conspiracy as a whole, the sentencing judge should have been asked to determine the drug quantity attributable to him alone. Failure to make

such a request, according to Rivas, was ineffective assistance of counsel.

Contrary to what Rivas claims, his attorney did make the attribution argument at sentencing. His attorney argued in his sentencing memorandum and at the sentencing hearing that the mandatory minimum of twenty years did not apply because Rivas was not convicted on any substantive drug count. Sentencing counsel argued that "this Court should find that the reliably proven 'relevant' quantity is less than 50 grams, and on that basis hold that the [21 U.S.C. § 841](b)(1)(A) mandatory minimum does not apply." Def. Sentencing Memo at 9. At the sentencing hearing itself, counsel relied heavily on the precise argument that Rivas now claims was not made. Counsel stated:

> for purposes of quantity and mandatory . . . when you look into [Rivas] culpability of the conspiracy, [the] 50 grams threshold is not met beyond a reasonable doubt and the lower mandatory should apply of a 5 year mandatory in this particular case with the enhancement which would give the defendant an aggregate sentence of 120 months. Tr. Sentencing Hearing at 39-40.

Rejecting sentencing counsel's arguments that the 50 gram threshold was not met and the lower mandatory minimum applied, the court found, beyond a reasonable doubt, that "the amount of cocaine base (crack) . . . attributable . . . to [Rivas] did exceed 50 grams." Tr. Sentencing Hearing at 52. Therefore, Rivas cannot show counsel's performance was deficient because counsel made the argument which was considered and rejected.

**Sentencing Entrapment**

Rivas also argues that his counsel failed to argue sentencing entrapment as a ground for a downward departure. Sentencing entrapment exists "when a defendant,

although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *United States v. Tykarsky*, 446 F.3d 458, 477 n. 13 (3d Cir. 2006) (*quoting United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir. 1994)) (internal quotation marks omitted). Sentencing entrapment is "defined as 'outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities' for the purpose of increasing the amount of drugs . . . and the resulting sentence of the entrapped defendant.'" *United States v. Raven*, 39 F.3d 428, 438 (3d Cir. 1994) (citations omitted).

The Third Circuit has not recognized the doctrine of sentencing entrapment. *Id*. Even if it was recognized in this circuit, it would not have applied. The evidence demonstrated that Rivas was the purveyor of the drugs, and Cullen and Johnson were his salesmen. The drug source was Rivas. He even cut out the middle men to deal directly with Mobley. Rivas was predisposed to sell cocaine in excess of 50 grams before agents asked Mobley to seek large quantities of cocaine. When Mobley sought cocaine in excess of 50 grams, Rivas never objected. In fact, Rivas was able to supply the cocaine the following day.

Even if counsel had requested a downward departure on this basis, it would have been denied. No sentencing entrapment occurred because Rivas was predisposed to sell large quantities of cocaine. Counsel's performance cannot be deficient for failure to make a meritless argument or to pursue a frivolous strategy. *See Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010) (determining that "trial counsel was not ineffective for failing to raise a meritless due process objection"). Therefore, Rivas cannot show counsel's performance was deficient or that he was prejudiced because his counsel failed to seek

a downward departure on the basis of sentencing entrapment.

## Due Process

Rivas also contends that he was denied his right to a fair trial under the Fifth Amendment, citing the admission of the "target" testimony, the failure to give appropriate jury instructions, and the failure to make a finding regarding the amount of cocaine attributable to Rivas personally. This argument is a reiteration of his other arguments. Even if it stood on its own, his due process claim is procedurally defaulted.

Procedural default occurs and a defendant is barred from raising the claim in his habeas petition when the defendant fails to raise it at trial or on direct appeal. *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006). However, an exception is recognized when the "defendant can demonstrate both 'cause' for not raising the claim at trial, and 'prejudice' from not having done so. *Id.* at 351 (*citing Massaro v. United States*, 538 U.S. 500, 504 (2003)). Rivas has demonstrated neither cause nor prejudice.

These due process claims were not raised by Rivas during his trial or on his direct appeal. Nor does he attempt to show cause for failing to raise these claims at trial or on his direct appeal. Although ineffective assistance of counsel can be used to avoid procedural default, Rivas has not proven his ineffective assistance of counsel claims. Therefore, his due process claims have been procedurally defaulted.

## Hearing

An evidentiary hearing must be held unless "'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . .'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (per curiam) (*quoting* 28 U.S.C. § 2255(b)). In determining whether to grant the defendant a hearing, the defendant's factual allegations

are accepted as true unless the record shows those allegations to be frivolous.  *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (citations omitted).

Rivas has made no factual allegations that are not already set forth in the record. There are no disputed facts that need resolution.  His contentions can be reviewed and analyzed on the basis of the record.  Therefore, there is no necessity for a hearing.

## Certificate of Appealability

In a § 2255 action, a certificate of appealability should be issued only if the petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Rivas has not done so.  Thus, a certificate of appealability will be denied.